PARTIDO POPULAR DEMOCRÁTICO, demandante y recurrente, *v.* JUNTA REVISORA ELECTORAL, demandada y recurrida.

*Número:* O-80-42     *Resuelto:* 7 de marzo de 1980

*Pedro E. Ortiz Álvarez,* abogado del recurrente.

### RESOLUCIÓN

A la solicitud de revisión en el recurso de epígrafe, no ha lugar.

Lo acordó el Tribunal y certifica el señor Secretario. El Juez Asociado Señor Dávila emitió voto separado. El Juez Asociado Señor Negrón García emitió un voto disidente por separado.

(Fdo.) Ernesto L. Chiesa
*Secretario*

—O—

Voto del Juez Asociado Señor Dávila.

San Juan, Puerto Rico, a 7 de marzo de 1980

Me he unido a los otros seis Jueces para no expedir el auto solicitado en el presente caso porque me parece que es absolutamente claro que la publicación en los periódicos que circulan en Puerto Rico de una invitación a celebrar el tradicional día de Reyes en La Fortaleza en la que aparecen

los retratos de los anfitriones no infringe las disposiciones del Art. 8.001 de la Ley Núm. 4 de 20 de diciembre de 1977, 16 L.P.R.A. sec. 3351, que "prohíbe a las agencias del Gobierno de Puerto Rico, que a partir del lro. de enero del año en que deba celebrarse una elección general y hasta el día siguiente a la fecha de celebración de la misma, incurran en gastos para la compra de tiempo y espacio en los medios de difusión pública *con el propósito de exponer sus programas, proyectos, logros, realizaciones, proyecciones o planes*". (Énfasis suplido.)

—O—

Voto disidente del Juez Asociado Señor Negrón García.

San Juan, Puerto Rico, a 7 de marzo de 1980

Comprendemos la renuencia de la mayoría a expedir. Sin embargo, siendo nuestro deber judicial darle virtualidad y convertir en realidad el ideal legislativo de *igualdad* en el debate político, con toda deferencia estimamos dicho proceder equivocado. Nos explicamos. Se nos pide revisemos [1] la juridicidad de la siguiente resolución emitida por la Junta Revisora Electoral:

"El 15 de enero de 1980 el Partido Popular Democrático radicó su impugnación a un anuncio de prensa de La Fortaleza, en el que el Gobernador y su esposa invitaban a los niños de Puerto Rico a una

[1] El Art. 1.024 de la Ley Electoral de Puerto Rico, Núm. 4 de 20 de diciembre de 1977, autoriza el recurso de revisión, por interacción del 1.023 "dentro de los cinco (5) días siguientes a la notificación",—término que se reduce a veinticuatro (24) horas si se interpone dentro de los treinta (30) días anteriores a un evento electoral—y reconoce que "todo recurso de revisión ante el Tribunal Supremo de Puerto Rico al amparo de esta ley, se tramitará conforme las Reglas de Procedimiento Civil de Puerto Rico de 1958, enmendadas; excepto para los procedimientos instados en cualquier momento durante los treinta (30) días anteriores a un evento electoral, los cuales se regirán por aquellas reglas que al efecto adopte el Tribunal Supremo de Puerto Rico". La Regla 68 de Procedimiento Civil dispone que "cuando el plazo prescrito o concedido sea menor de siete (7) días, los sábados, domingos y días de fiesta legal intermedios se excluirán del cómputo".

Aplicadas estas normas al caso de autos, observamos que desde la fecha de notificación de la Resolución que nos ocupa—23 de enero—hasta la radicación—30 de enero—mediaron dos días feriados y sólo transcurrieron siete días. En consecuencia, no hay problema jurisdiccional envuelto.

Fiesta de Reyes en La Fortaleza, por considerar que el mismo era contrario a lo dispuesto en el Artículo 8.001 de la Ley Electoral.

Además, el peticionario solicitó que se enmendara el 'Reglamento de Control de Gastos en los Medios de Difusión Pública durante el Año Electoral para las Agencias del Estado Libre Asociado' (de aquí en adelante denominado Reglamento de Control de Gastos), para proteger adecuadamente la garantía del Artículo 8.001 de la Ley.

El Artículo 12 del Reglamento de Control de Gastos, concede a los Comisionados Electorales un término de cinco (5) días, contados a partir de la fecha de la notificación de la decisión de la Junta, para impugnar por escrito cualquier anuncio así aprobado. En este caso, el Partido Popular Democrático radicó su escrito de impugnación trece (13) días después de recibir la notificación de la Junta; obviamente radicado fuera de término. Además, el peticionario acepta que su escrito de impugnación es académico, ya que el anuncio no volverá a ser publicado.

Las alegaciones del peticionario son inmeritorias. El Partido Popular Democrático ha tenido a su disposición el procedimiento de impugnación contenido en el Artículo 12 del Reglamento de Control de Gastos y no lo utilizó para su beneficio.

Es improcedente e inapropiada la solicitud de enmienda al referido Reglamento porque el mismo contiene el mecanismo necesario para salvaguardar el derecho a debido procedimiento de ley."

I

El Art. 8.001 de la Ley Núm. 4 de 20 de diciembre de 1977, 16 L.P.R.A. sec. 3351, denominada Ley Electoral de Puerto Rico consigna:

"Se prohíbe a las agencias del Gobierno de Puerto Rico, que a partir del 1ro. de enero del año en que deba celebrarse una elección general y hasta el día siguiente a la fecha de celebración de la misma, incurran en gastos para la compra de tiempo y espacio en los medios de difusión pública con el propósito de exponer sus programas, proyectos, logros, realizaciones, proyecciones o planes. Se exceptúan de esta disposición aquellos avisos y anuncios de prensa expresamente requeridos por ley.

*Asimismo, se exceptúan de la anterior disposición aquellos anuncios que sean utilizados para difundir información de interés público, urgencia o emergencia, los cuales sólo serán permitidos previa autorización al efecto de la Junta Revisora Electoral."* (Énfasis nuestro.)

La transcrita disposición se incorporó originalmente a nuestro ordenamiento en el Código Electoral derogado. ([2]) Por su inestimable valor al proceso electoral, la nueva Ley Electoral la adoptó. Plasma un principio de alta moralidad en la administración pública e intenta lograr los siguientes objetivos: (a) directamente, evitar que las agencias gubernamentales usando fondos públicos y so pretexto de exponer sus ejecutorias o planes, realicen solapadamente campaña política en favor del partido en el poder y aquellos incumbentes que aspiran nuevamente a ser electos; (b) reducir las ventajas reconocidas que gozan los candidatos incumbentes—a través del acceso a los electores y público en general por medio de la televisión, prensa y radio—que el solo ejercicio y exposición del cargo conlleva sobre sus opositores; y (c) indirectamente, frenar los excesos y economizar al erario público y a los contribuyentes los gastos ordinarios de publicidad en año de elecciones.

En virtud del Art. 1.026 de la Ley Electoral concediendo a la Junta Revisora facultad para adoptar "las reglas de procedimiento necesarias para la realización efectiva de sus funciones adjudicativas", ésta, en 16 de junio de 1979 aprobó el *Reglamento de Control de Gastos en los Medios de Difusión Pública Durante el Año Electoral para las Agencias del Estado Libre Asociado.* En lo pertinente a la solución del caso declara que dicho precepto "tiene como propósito el impedir que un partido que ostente el poder de gobernar al pueblo en un momento dado utilice fondos públicos para el pago de anuncios que velada o abiertamente coacciona la libre formación de la voluntad de los electores, aunque sin coartar ni obstaculizar su deber de difundir aquella información de legítimo interés público". (Art. 2, *in fine.*) El Art. 4, inciso 5 define *información de interés público* como "toda divulgación que afecte los derechos, las obligaciones, o el bienestar de la ciudadanía en general, en el ámbito de responsabilidad de

---

([2]) Ley Núm. 1 de 13 de febrero de 1974. Véase: *Diario de Sesiones*, Vol. XXVIII, Núm. 18, pág. 188 (1974).

cada agencia del gobierno, según sus deberes y funciones"; y el inciso 15 explica los conceptos *urgencia* o *emergencia* como "situación de carácter súbito o imprevisto, ocasionada por actos del hombre o de la naturaleza, que requiere la inmediata divulgación de información por una agencia, según el ámbito de sus deberes y funciones".

Adicionalmente, el Reglamento define otros conceptos y provee los mecanismos y pasos para canalizar las solicitudes de autorización de anuncios. Al respecto deberán radicarse "con no menos de treinta (30) días laborables de anticipación a la fecha en que la agencia proyecta iniciar la emisión del anuncio o tipo de anuncio específico", conteniendo las razones para la solicitud, el porqué amerita la aprobación y "una relación sucinta y concisa de la naturaleza y *forma* del anuncio y copia de los mismos incluidos en la solicitud". (Arts. 8 y 9.) Para situaciones de emergencia se prescribe un trámite bajo el Título III del Reglamento. Y por último, consigna la facultad discrecional de la Junta para ventilar mediante vista la procedencia de tales solicitudes, disponiéndose que su decisión se notificará a la agencia promovente y a los Comisionados Electorales de los Partidos Políticos.

## II

Teniendo en mente este marco jurídico conceptual, preguntamos: ¿debió ventilarse en sus méritos la impugnación ante la Junta? ¿Debió el Tribunal expedir el auto de revisión? Por resultar el asunto justiciable y no académico, creemos que sí. (3)

Primeramente, estamos ante una nueva e importante disposición de ley electoral que cubre situaciones susceptibles de reproducirse durante los meses venideros antes de las elecciones en noviembre. Aun cuando no se repetirá en el contexto de la festividad del Día de Reyes y la ya tradicional

---

(3) Véase: Note, *Mootness on Appeal*, 83 Harv. L. Rev. 1672 (1970); Tribe, *American Constitutional Law*, secs. 3-8, págs. 54-55.

actividad en La Fortaleza, potencialmente puede surgir en otro tipo de actos ejecutivos ya que la prohibición de ley es amplia pues contempla la exposición de "programas, proyectos, logros, realizaciones, proyecciones o planes". En segundo lugar, la caracterización de académico fundada en haber pasado el evento, por sí no es una buena ni correcta norma decisional. De hecho podría interpretarse como una claudicación a la responsabilidad de darle vigencia y validez a la prohibición legislativa, ya que las excepciones a la ley sobre las cuales viene obligada la Junta a pasar juicio, precisamente son las basadas en "información de interés público, *urgencia* o *emergencia*". Estos supuestos, en particular los últimos, razonablemente tienden a indicar que el grueso de las dispensas a ser solicitadas ante dicho foro versarán sobre situaciones pasajeras, de índole extraordinarias, que exigen una rápida, pero correcta actuación, y no sobre circunstancias ordinarias y rutinarias. Siendo ello así, resulta peligrosa la norma de abstención en que se apoya la Junta Revisora Electoral y que este Tribunal, con su silencio, adopta hoy. Tercero, tratar de académicos los planteamientos del recurrente, sin disponer sobre la enmienda al reglamento y proveer remedios que no tornen en ilusoria la participación eficiente de los comisionados electorales de los partidos políticos, en su labor fiscalizadora, deja una laguna indeseable en la eficaz administración del estatuto electoral. Y finalmente, la solicitud de dispensa debió formularse según visto, treinta (30) días antes. Nótese, además, que el término de cinco (5) días para la impugnación vencía el 7 de enero de 1980, esto es, con posterioridad a la celebración del evento. En estas circunstancias, argüir, como lo hizo la Junta, tardanza en la radicación de la impugnación—cuando ella no observó el término reglamentario—es un contrasentido que no puede servir de base para legitimar su Resolución.

## III

Con estos antecedentes legales presentes examinemos los hechos (⁴) de importancia.

Resalta que tratándose de una actividad tradicional, de carácter anticipable, es inexplicable e inexcusable que la solicitud se presentara el 31 de diciembre de 1979. Ello concedió a la Junta escasamente dos o tres días laborables, para que dentro del cúmulo de otros asuntos pasara juicio sobre la misma. Se infringió así el Art. 8 del Reglamento que prescribe la radicación 30 días antes. Como consecuencia, *lo que esencialmente no era ni urgente o de emergencia cobró, desde el punto de vista procesal, tales características por la irrazonable tardanza en que fue sometido.* La misma es presentada por una agencia de publicidad comercial, y surge que el anuncio, no sólo tenía como texto la invitación, sino *fotos* del Gobernador y su señora esposa. La importancia y complejidades de los deberes del Primer Ejecutivo nos mueve razonablemente a concluir que no intervino en su preparación y estuvo ajeno a la interrogante legal que el contenido fotográfico planteaba. Ciertamente, las personas que lo hicieron trataron muy superficialmente el asunto.

Por ser la Junta un organismo cuasi judicial especializado con destreza en estos asuntos, somos de opinión que corresponde a dicho foro inicialmente pronunciarse si el anuncio caía dentro de la prohibición, y si bajo dicha hipótesis, la inclusión de los retratos del señor Gobernador y su señora esposa eran necesarios para comunicar eficaz y adecuadamente la invitación a las actividades del Día de Reyes. Ello debe analizarse tomando en cuenta que sus nombres son de

(⁴)El mencionado Art. 1.024 prescribe que las "determinaciones de hecho de la Junta serán finales, pero cualquier parte perjudicada podrá entablar recurso de revisión fundamentado en cuestiones de derecho ante el Tribunal Supremo". La ausencia de determinaciones por la Junta en el caso de autos, nos permite evaluar el cuadro fáctico pertinente. Advertimos no obstante, el principio doctrinario de que "constituye una 'cuestión de derecho' determinar si las conclusiones de hecho que sirven de base a la orden administrativa, están sostenidas por evidencia sustancial". *López* v. *Junta de Planificación,* 80 D.P.R. 646, 672 (1958).

conocimiento general en todo el país, por ser ambos figuras públicas prominentes. También debe evaluar si al incluir tales fotos la agencia publicitaria, se violentó la disposición de ley envuelta teniendo presente el valor y las ventajas reconocidas—que en las lides y propaganda política partidista—la fotografía de un candidato a puesto público presenta.

## IV

La Asamblea Legislativa colocó ". . . los aspectos decisionales del proceso electoral que tengan naturaleza cuasi judicial [sic] adjudicativa en manos de un organismo capacitado *para obrar con independencia de criterio*". [5] Lo denominó Junta Revisora Electoral. Por ende, para que su labor resulte fructífera y de confianza en esta democracia, ha de hacerse rigurosamente, dentro de un estricto marco de legalidad, con sentido crítico y consciencia de los propósitos que inspiran la ley. Bajo el Art. 8.001 su intervención y supervisión no se limita a pasar juicio únicamente sobre aquellos anuncios en que se le solicita dispensa, sino que se extiende al examen de querellas fundadas y a posibles violaciones de ley por no haber sido autorizados los mismos. En el descargo de su encomienda viene obligada a eliminar aquella información o material irrelevante, innecesario o de carácter proselitista. Debe darle estricto cumplimiento a su Reglamento y exigir que aquellos anuncios de "interés público" que no son urgentes, sean sometidos con suficiente antelación bajo apercibimiento de no autorizarlos. No debe haber dudas de que es a la agencia de gobierno solicitante que le corresponde demostrar y establecer fehacientemente el interés público o el carácter urgente o de emergencia del anuncio. Ausentes estos requisitos, su obligación es negar la solicitud. _

Aparte de las sanciones penales preceptuadas en los Arts. 8.004 y 8.005, entre los remedios adicionales a ser diseñados

---

[5] Alcance de la Medida, *Informe Conjunto de las Comisiones de Gobierno de la Cámara de Representantes y el Senado, pág. 12.*

reglamentariamente como penalidad por violaciones a la ley, puede y debe la Junta Revisora descontar del Fondo Electoral correspondiente al partido político en el poder el costo de tales anuncios. La lógica y justicia de esta medida correctiva radica en que la premisa del estatuto es que un anuncio no autorizado representa una propaganda político-partidista en favor del partido político que gobierna los destinos del país en determinado momento. Para tales fines, entre la información que debe acompañar la solicitud de anuncio, debe requerirse el costo total de su publicación en los medios de comunicación.

La petición de enmienda reglamentaria también es meritoria. No puede haber adecuada fiscalización de los partidos de oposición, si la notificación es una a posteriori. Debe actuarse sobre este extremo.

En virtud de lo expuesto, expediría el auto y dictaría sentencia revocando la resolución de la Junta Revisora Electoral devolviéndole el asunto para que—previa audiencia de las partes—procediera a disponer el remedio apropiado y las enmiendas reglamentarias necesarias y a tono con este dictamen. No hacerlo es un grave error, pues si bien "[l]a ley tiene vocación de plenitud; el legislador al promulgarla no admite más excepciones de aplicación que las que él mismo reconoce en la propia norma, pero la vida es mucho más fecunda que la imaginación más fértil, de ahí que puedan surgir nuevos casos que escapen a las previsiones legislativas y el juez tiene obligación de resolverlos. . .". K. Entrena, *La Equidad y el Arte de Juzgar*, Ed. Aranzandi, Pamplona, 1979, pág. 18.